W. Scott Mitchell
Hannah E. Tokerud
HOLLAND & HART LLP
401 North 31st Street
Suite 1500
P.O. Box 639
Billings, Montana 59103-0639
Telephone: (406) 252-2166
Fax: (406) 252-1669
smitchell@hollandhart.com
hetokerud@hollandhart.com

Attorneys for Defendant
XTO Energy Inc.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# BILLINGS DIVISION

| | |
|---|---|
| MARY L. DEVERA, as Personal Representative of the Estate of Trent Vigus, deceased,<br><br>        Plaintiff,<br><br>vs.<br><br>EXXON MOBIL CORPORATION and XTO ENERGY, INC.,<br><br>        Defendants. | CV 18-59-BLG-TJC<br><br>**DEFENDANT XTO ENERGY INC.'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |

Defendant XTO Energy Inc. ("XTO"), by and through its counsel of record, Holland & Hart LLP, hereby files its brief in support of its motion for summary judgment.

I.  **INTRODUCTION**

On December 21, 2017, Plaintiff Mary DeVera, as personal representative of the estate of Trent Vigus, sued XTO and its parent,[1] Exxon Mobil Corporation, for wrongful death, claiming that XTO was negligent in its operation of an oil well, equipment, tanks, and operating procedures.  The cause of action accrued on July 9, 2010, the date of the decedent's death.  The statute of limitations therefore expired on July 9, 2013 (three years after the decedent's death).  Plaintiff's claim is barred by the statute of limitations because tolling does not apply.  The personal representative of the decedent's estate, with assistance of counsel, either knew or reasonably should have known about the claim as early as September 2010.  *See* § 27-1-513, MCA (creating cause of action for wrongful death); *Carroll v. W.R. Grace & Co.*, 252 Mont. 485, 830 P.2d 1253 (1992) (stating a wrongful death action accrues at the decedent's death); *Bryant v. Hall*, 157 Mont. 28, 482 P.2d 147 (1971) (applying a three-year statute of limitations to wrongful death cases). Because the Complaint was not timely filed, XTO is entitled to summary judgment.

---

[1] Exxon Mobil Corporation completed its acquisition of XTO on June 25, 2010, which according to the allegations in the Complaint was two weeks before the decedent's death.  *See* Exxon Mobil Corporation's United States Securities and Exchange Commission Form 10-K for the Fiscal Year Ended December 31, 2010, Part I, Item 1 (Feb. 25, 2011) (stating that on June 25, 2011, Exxon Mobil Corporation acquired XTO).

## II.   FACTUAL BACKGROUND

Trent Vigus (the "decedent") was discovered unresponsive at an XTO well site in Richland County, Montana, on July 9, 2010.  Statement of Uncontroverted Facts ("SUF"), ¶ 4.  He was pronounced dead that day.  SUF, ¶ 5.  On August 19, 2010, Terrilyn Vigus ("Vigus"), the decedent's mother, applied to be appointed as personal representative of the estate and to open an informal probate.  SUF, ¶ 6.  She was the only heir or devisee listed on the application, and she stated that she was unaware of any other persons who had a prior or equal right to appointment as personal representative.  SUF, ¶ 6.  On August 24, 2010, the court appointed Vigus as personal representative.  SUF, ¶ 8.  Vigus was represented by an attorney, Rick Anderson ("Anderson").  SUF, ¶ 7.

On August 26, 2010, Anderson requested copies of reports from the Richland County Sheriff's Office regarding the decedent's death.  SUF, ¶ 9.  Anderson received the requested reports on September 7, 2010.  SUF, ¶ 9.  The Sheriff's Offense/Incident Report identified the death as "a possible H2S gas death," but noted that "the well site was not suppose[d] to have H2S and no signs of H2S were showing up."  SUF, ¶ 10.  On August 27, 2010, Anderson asked for a copy of the entire medical file regarding the death.  SUF, ¶ 11.  On September 7, 2010, Anderson received copies of the medical record from the Sidney Health Center.  SUF, ¶ 12.  The medical record was 27-pages long and included an

3

ambulance report from Emergency Medical Services and a toxicology report. SUF, ¶ 12-14. The Emergency Medical Services ambulance report stated that the ambulance was "dispatched to rig for man exposed to H2S." SUF, ¶ 13. The toxicology report indicated that the decedent's blood tested positive for trace amounts of propane and n-butane and that the role of propane and butane "in toxic events has been documented." SUF, ¶ 14.

Anderson also requested documents from the Richland County Coroner's Office, and he received the coroner's file on September 7, 2010. SUF, ¶ 15. Dr. Thomas Bennett of Billings (a pathologist) performed an autopsy at the request of the Richland County Coroner. SUF, ¶ 16. Dr. Bennett's report stated that "[c]oncerns were initially over the possibility of hydrogen sulfide or methane exposure." SUF, ¶ 17. Dr. Bennett ultimately determined the decedent's death was due to hypertensive cardiovascular disease. SUF, ¶ 17.

On July 12, 2011, Vigus filed a sworn statement to close the estate. SUF, ¶ 9. On April 13, 2015, Vigus filed a motion to reopen the estate. SUF, ¶ 10. She was represented by a new attorney, Shawn Rosscup of the firm Wells & McKittrick, and the stated reason for reopening the estate was a potential wrongful death claim. SUF, ¶ 10. On April 13, 2015, the court granted the motion to reopen the estate. SUF, ¶ 11. On May 9, 2017, Jamie McKittrick, an attorney also associated with Wells & McKittrick, filed a motion to withdraw as personal

representative.  SUF, ¶ 12.  The court granted the motion on May 12, 2017, even though McKittrick had never been appointed personal representative.  SUF, ¶ 12.

On November 9, 2017, Vigus withdrew as personal representative, and Plaintiff Mary DeVera was appointed as successor personal representative.  SUF, ¶ 13.  DeVera stated that she was the legal guardian of the minor child of the decedent.  SUF, ¶ 13.  DeVera was represented by a new attorney, Andrew Huppert.  SUF, ¶ 13.  The Complaint in this case was then filed on December 21, 2017, with Huppert as one of the counsel of record.  Complaint, Doc. 1; SUF, ¶ 14.

The Complaint states the decedent's alleged common-law wife, Emma Vigus ("Emma"), did not have notice of the cause of action until April 2016 when she read an article about oil field deaths.[2]  Complaint, ¶ 19.  However, the estate had been reopened on April 30, 2015, by the personal representative Terrilyn Vigus, stating as the reason an alleged wrongful death claim.  SUF, ¶ 10-11.

### III.    SUMMARY JUDGMENT STANDARD

Summary judgment is proper where the undisputed, material facts demonstrate that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together

---

[2] Emma and the minor child were not identified as heirs by Terrilyn Vigus when she opened the informal probate on August 19, 2010.  SUF, ¶ 6.

with the affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable fact-finder to return a verdict for the nonmoving party. *Id.* If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue of fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## IV.   ARGUMENT

**A.   Standing to maintain an action for wrongful death and accrual of such an action**

Section 27-1-513, MCA, creates a cause of action for wrongful death. Before 1987, § 27-1-513 read:

> When the death of one person, not being a minor, is caused by the wrongful act or neglect of another, his ***heirs or personal representatives*** may maintain an action for damages against the person causing the death or, if such person be employed by another person who is responsible for his conduct, then also against such other person.

In 1987, the Montana legislature amended this section, which now reads:

> When injuries to and the death of one person are caused by the wrongful act or neglect of another, ***the personal representative of the decedent's estate*** may maintain an action for damages against the person causing the death or, if such person be employed by another

> person who is responsible for his conduct, then also against such other person.

(emphasis added).

This change to § 27-1-513 is significant because heirs no longer have standing to maintain an action for wrongful death. Instead, the personal representative is the only person entitled to maintain such an action.

A wrongful death action accrues at the time of the decedent's death. *Carroll v. W.R. Grace & Co.*, 252 Mont. 485, 830 P.2d 1253 (1992). A three-year statute of limitations apples to wrongful death actions. *Bryant v. Hall*, 157 Mont. 28, 482 P.2d 147 (1971). Here, the cause of action accrued on July 9, 2010, the date of the decedent's death.

**B.     Minority tolling**

In the Complaint, Plaintiff alleges that the statute of limitations is tolled for Trent Vigus, Jr., pursuant to § 27-2-401(1), MCA, due to his minority. Complaint, ¶ 20.

The current version of section 27-1-513, MCA, has been interpreted to mean that only one wrongful death action arising out of an adult's wrongful death may be brought and that the personal representative of the decedent's estate is the only person who may bring such an action. *Renville v. Fredrickson*, 2004 MT 324, ¶ 21; § 27-1-501(2), MCA. The personal representative holds the proceeds of any

damage award for the heirs of the decedent and the award does not become part of the decedent's estate.  *Id.*

Prior to the 1987 amendment to § 27-1-513, MCA, in applicable cases, a survivor action and wrongful death action could be filed as separate actions for a single negligently-inflicted death.  *Renville*, ¶ 24.  "In 1987, the legislature determined that in those situations where both causes of actions were applicable, to prevent multiple lawsuits arising from the same death, the personal representative must bring both actions together" and may only recover any element of damages available once.  *Id.*

Under § 27-1-511, MCA, a minor may not sue without the assistance of a guardian (*i.e.*, a person who has reached majority).  Section 27-2-401(1), MCA, provides "[i]f a person entitled to bring an action . . . is, at the time the cause of action accrues . . . a minor . . . the time of the disability is not part of the time limit for commencing the action."  Minority tolling only applies "[i]f a person entitled to bring an action" is a minor when the cause of action accrues.  *See* § 27-2-401(1), MCA.

Because after the 1987 amendment to § 27-1-513, MCA, only a personal representative is "entitled to bring an action" for wrongful death, not an heir, § 27-2-401(1) does not apply to wrongful death actions.  No genuine issues of material fact exist as to this issue.  Instead, this is a purely legal issue appropriately resolved

on summary judgment. Minority tolling cannot apply to the case, and summary judgment should be granted on this basis.

**C.     The discovery rule**

Plaintiff also suggests that the statute of limitations is tolled because Emma believed the decedent died of natural causes and because the facts constituting the claim were by their nature concealed or self-concealing. Complaint, ¶ 19.

**1.     Applicable law**

An exception to the general rule that a claim accrues at the decedent's death is the so-called discovery rule. Pursuant to § 27-2-102(2), MCA, "[l]ack of knowledge of the claim or cause of action, or of its accrual, by the party to whom it has accrued does not postpone the beginning of the period of limitation." Section 27-2-102(3), MCA, further provides:

> The period of limitation does not begin on any claim or cause of action for an injury to person or property until the facts constituting the claim have been discovered or, in the exercise of due diligence, should have been discovered by the injured party if:
>
> (a)   the facts constituting the claim are by their nature concealed or self-concealing; or
>
> (b)   before, during, or after the act causing the injury, the defendant has taken action which prevents the injured party from discovering the injury or its cause.

"The fact that a party does not know that he or she has a claim, whether because he or she is unaware of the facts or unaware of his or her legal rights, is usually not sufficient to delay the beginning of the limitations period." *Christian v. Atlantic*

*Richfield Co.*, 2015 MT 255, ¶ 61 (citing, *inter alia*, § 27-2-102(2)).  However, "if the facts constituting the claim are concealed or self-concealing in nature, or if the defendant has acted to prevent the injured party from discovering those facts," the statute of limitations does not start "to run until the injured party has discovered, or in the exercise of due diligence should have discovered, both the injury and its cause." *Id.* (citing, *inter alia*, § 27-2-102(3)).  Under § 27-2-102(3), MCA, a "claim accrues when the plaintiff is given notice or information that would prompt a reasonable person to conduct further discovery." *Id.*  The limitation period will not be tolled where the plaintiff is given such notice but fails to exercise reasonable diligence.  *Id.* at ¶ 64.

Mere suspicions will not trigger the running of the limitations period, but the plaintiff need not have actual and complete knowledge of the facts constituting the claim in order for the claim to accrue.  *Id.*  "[I]nformation sufficient to lead a prudent [person] to inquiry or action is enough to trigger the running of the limitations period."  *Id.* at ¶ 64.

Self-concealing facts include the presence of latent disease, the nondisclosure of information, or an injury that is not apparent to a layperson because of its complexity and that can only be discovered by professional analysis.  *Id.* at ¶ 62.  Even if the cause of death required specialized testing to discover, "an injury is no longer self-concealing for purposes of the discovery rule where a

potential plaintiff has notice of the injury sufficient to prompt a reasonable person to further inquiry." *Id.* at ¶ 71.

"The statute of limitations is tolled only where the defendant has engaged in fraudulent concealment or affirmatively prevented the injured party from discovering that he or she has been injured." *Id.* at ¶ 73. "Fraudulent concealment consists of the employment of artifice, planned to prevent inquiry or escape investigation, and mislead or hinder acquisition of information disclosing a cause of action." *Id.* (quotations and internal quotation marks omitted).

### 2.     Non-applicability of the discovery rule

The discovery rule is inapplicable. Here, the "injury" was a death. The damages for wrongful death are provided for by statute. Neither the injury nor the damages were self-concealing. In addition, nothing suggests that the cause of injury (*i.e.*, the death) was self-concealing. In fact, the personal representative exercised due diligence to investigate the cause of the death. Vigus was represented by an attorney, Anderson, who requested copies of records from the Richland County Sheriff's Office, the Sidney Health Center, and the Richland County Coroner's Office. SUF, ¶¶ 9, 11, 15. In response to his requests, Anderson received, *inter alia*, the Sheriff's Offense/Incident Report, an ambulance report, a toxicology report, and an autopsy report. From these documents, Anderson (and thus Vigus) learned that the death was identified as "a possible H2S

gas death," SUF, ¶ 10, that dispatchers believed the ambulance was "dispatched to rig for man exposed to H2S," SUF, ¶ 13, and that the decedent's blood tested positive for trace amounts of propane and n-butane, SUF, ¶ 14. Dr. Bennett ultimately concluded that the decedent's death was due to hypertensive cardiovascular disease, but he noted that "[c]oncerns were initially over the possibility of hydrogen sulfide or methane exposure." SUF, ¶ 17. The fact that the sheriff, pathologist, and medical personnel were considering exposure to toxic gas as a cause of death (even if they ultimately ruled it out) alerted Vigus, the personal representative, that it was a possibility.

Tolling does not apply because there was sufficient information to lead a prudent person to inquiry of the facts constituting the claim, *see Christian*, ¶ 64, and because Vigus (through Anderson) did in fact inquire into the facts constituting the claim. As early as September 2010, Vigus, the sole person with the right to maintain an action for wrongful death, had actual knowledge of facts that could constitute a wrongful death claim. However, she chose not to pursue a wrongful death claim despite learning such facts.

Counsel for Plaintiff attempted to revive the obviously time-barred claim by naming a new personal representative. The new personal representative (Plaintiff) is apparently the mother of the decedent's alleged common law wife, Emma, and grandmother of the minor child of Emma and the decedent, born after the

decedent's death. Emma, the alleged common law wife, and her minor child were not identified as heirs or devisees of the decedent when the informal probate was opened in August 2010. SUF, ¶ 6.

Plaintiff claims tolling applies because Emma believed the decedent died from natural causes until April 2016, when she allegedly "read about another similar oil well thief hatch death." Complaint, ¶ 19. The allegation that the cause of action was not known until Emma read an unidentified document in 2016 is irrelevant. As set forth above, only the personal representative has standing to bring a claim for wrongful death. Thus, it is what the personal representative knew or should have known that is at issue. Terrilyn Vigus, the first personal representative, had knowledge of facts that could constitute the claim for wrongful death as early as September 2010 but chose not to pursue the claim within the applicable statute of limitations. On April 13, 2015, well after the statute of limitations had expired, Vigus reopened the estate based on a potential wrongful death claim. She was not replaced by the successor personal representative until November 2017. SUF, ¶¶ 10-11, 13. There is no rule that a successor personal representative gets another bite at the apple to revive an expired claim when facts constituting the claim have already been discovered.

Plaintiff has no basis to argue that there was fraudulent concealment and in fact the Complaint contains no such allegation. "Fraudulent concealment consists

13

of the employment of artifice, planned to prevent inquiry or escape investigation, and mislead or hinder acquisition of information disclosing a cause of action." *Christian*, ¶ 73 (quotations and internal quotation marks omitted). The death and the location of the death were well known, and no one prevented the personal representative from discovering the injury (death). Even though XTO disputes that the cause of death was inhalation of toxic gas, there is no allegation in the Complaint that Defendants employed artifice, planned to prevent inquiry or escape investigation, or misled or hindered acquisition of information disclosing a cause of action.

Because Plaintiff failed to file the complaint before the expiration of the statute of limitations and no tolling applies, the Complaint is untimely and subject to a summary judgment ruling. There is no genuine issue of material fact, and XTO is entitled to judgment as a matter of law.

## V.  CONCLUSION

The cause of action accrued on July 9, 2010, the date of the decedent's death. The statute of limitations expired on July 9, 2013 (three years after the decedent's death). The Complaint was not filed until December 21, 2017. The limitation period was not tolled. Minority tolling does not apply to wrongful death cases. The discovery rule is also inapplicable here. The personal representative of the estate, with the assistance of counsel, actually discovered facts on which she

could plead the claim in September 2010. Because tolling does not apply, the Complaint was not timely filed, and summary judgment should be granted in favor of XTO.

Dated this 31st day of August, 2018.

>*/s/ W. Scott Mitchell*
>Holland & Hart LLP
>
>**ATTORNEYS FOR DEFENDANT XTO ENERGY INC.**

11322563_2