IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| MARY L. DEVERA, as Personal Representative of the Estate of Trent Vigus, deceased,<br><br>    Plaintiff,<br><br>vs.<br><br>XTO ENERGY, INC.,<br><br>    Defendants. | CV 18-59-BLG-TJC<br><br>**ORDER** |

  Plaintiff Mary Devera ("Devera"), as Personal Representative of the Estate of Trent Vigus, brings this action against XTO Energy, Inc. ("XTO Energy") seeking damages for the alleged wrongful death of Trent Vigus ("Trent"). Devera alleges Trent's death was caused by the negligence of XTO Energy in the management of its oil and gas operations. (Doc. 1 at ¶¶ 16, 18.) Devera seeks relief on behalf of Trent's son, Trent Vigus, Jr. ("Trent, Jr."), and Trent's wife, Emma Fischer ("Fischer"). (Doc. 1 at ¶¶ 19-21.)

  Pending is XTO Energy's motion for summary judgment. (Doc. 28.) The motion is fully briefed and ripe for decision. Having considered the parties' arguments, and for the following reasons, the Court orders that XTO Energy's motion is **DENIED**.

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

XTO Energy is a wholly-owned subsidiary of Exxon Mobil Corporation that engages in the exploration, drilling, and production of crude oil and natural gas in the State of Montana. (Doc. 34 at ¶¶ 1-2.) Trent was employed by Nabors Wells Services, Co. and worked at XTO well sites in Richland County, Montana. (Doc. 34 at ¶¶ 3,4.) On July 9, 2010, Trent was discovered unresponsive at an XTO well site and was pronounced dead later that day. (Doc. 34 at ¶¶ 4, 5.)

On August 19, 2010, Trent's mother, Terrilyn Vigus ("Terrilyn"), applied to be appointed as personal representative of Trent's estate. (Doc. 34 at ¶ 6.) Terrilyn was the only heir or devisee listed on the application, and she stated she was unaware of any other individuals with a prior or equal right to appointment as personal representative. (Doc. 34 at ¶ 6.) She was appointed as personal representative later that month. (Doc. 34 at ¶ 8.)

An attorney representing Terrilyn in her role as personal representative investigated Trent's death and obtained various reports regarding the cause of his death. (Doc. 34 at ¶¶ 9-17.) A Richland County Sheriff's Office report identified the death as "a possible H2S [hydrogen sulfide] gas death," but it also noted that "the well was not suppose[d] to have H2S and no signs of H2S were showing up." (*Id.* at ¶ 10). An Emergency Medical Services ambulance report also stated the ambulance was "dispatched to rig for man exposed to H2S." (*Id.* at ¶ 13.) The

2

entire medical filed regarding the death was also obtained. The toxicology report indicated trace amounts of propane and n-butane (*Id.* at 14), although Devera points out the levels were lower than the reporting limit. *Id.* The coroner's file was also obtained, which contained an autopsy performed by Dr. Thomas Bennett, a pathologist. (*Id.* at 15-16.) The autopsy report stated that "[c]oncerns were initially over the possibility of hydrogen sulfide or methane exposure," but Dr. Bennett ultimately concluded that Trent's death was due to hypertensive cardiovascular disease. (*Id.* at 17.)

Terrilyn's attorney believed there was no viable cause of action against Nabors Wells Services, Co, and he advised Terrilyn he was closing his file. (Doc. 34 at ¶ 34.) Terrilyn subsequently closed the estate on July 12, 2011. (Doc. 34 at ¶ 18.)

Prior to his death, Trent lived with Fischer, and the couple held themselves out to be married at common law. (Doc. 34-1 at ¶ 2.) Fischer was five months pregnant with the couple's child, Trent Jr., when Trent died. (Doc. 34 at ¶ 24.) Following Trent's death, a representative from the Sheriff's Department in Sidney, Montana advised Fischer that Trent died of a heart attack. (Doc. 34-1 at ¶ 4.) After Fischer gave birth to Trent, Jr., Fischer submitted Trent's death certificate to the hospital, which stated Trent died of heart disease. (Doc. 34 at ¶ 31.)

Fischer had no contact with the Vigus family between 2011 and 2017. (Doc. 34-1 at ¶ 9.) She did not receive notice of Terrilyn's appointment as personal representative of Trent's estate, and was unaware of the status of Trent's estate until 2017. (Doc. 34 at ¶ 33; Doc. 34-1 at ¶ 10.)

While she served as Trent's personal representative and for several years after, Terrilyn did not believe Trent Jr. was Trent's biological son. (Doc. 34-1 at ¶¶ 9,12.) In October 2017, however, Trent's paternity was established, and Fischer had her first contact with the Vigus family after Trent's death. (Doc. 34-1 at ¶¶ 15-16.)

In 2013, an occupational medicine physician contacted the Occupational Safety and Health Administration ("OSHA") regarding the deaths of two oil workers who died opening hatches on oil tanks. (Doc. 34 at ¶ 35.) The physician suspected that the deaths were caused by exposure to concentrated hydrocarbon gas vapors and insufficient oxygen after opening hatches of hydrocarbon storage tanks at frac wells. *Id.* The National Institute of Occupational Safety and Health investigated the matter and concluded nine deaths between 2010-2015 were related to hydrocarbon gas vapors from tank hatches on frac wells. (Doc. 34 at ¶ 35.) The United States Center for Disease Control published a report on these deaths, including Trent's, in Federal Morbidity and Mortality Weekly Report on January 15, 2016. (Doc. 34-22.)

Fischer contends she did not believe she had a basis for a lawsuit until 2015 when her mother (Devera) was contacted by a reporter researching the oilfield deaths. (Doc. 34 at ¶ 36; Doc. 34-1 at ¶ 13.) The reporter told Devera OSHA was investigating oil field deaths which occurred under similar circumstances to Trent's death. (Doc. 34 at ¶ 36.) Prior to speaking with the reporter, neither Devera nor Fischer claim to have had any reason to suspect Trent's death was caused by something other than heart disease. (Doc. 34-1 at ¶ 13; Doc. 34-2 at ¶ 3.)

In April 2015, Terrilyn filed a motion to reopen Trent's estate for a potential wrongful death claim, and the Montana Seventh Judicial District Court, Dawson County granted the motion. (Doc. 34 at ¶¶ 19-20.) Devera and her husband became Co-Guardians of Trent Jr. on June 22, 2017, and in November 2017, Terrilyn withdrew as personal representative and the court appointed Devera as successor. (Doc. 34 at ¶¶ 21, 22, 34.) Devera thereafter filed this action on December 21, 2017.

On August 31, 2018, XTO Energy filed a motion for summary judgment, arguing Devera's claim is barred by the three-year statute of limitations for wrongful death claims. (See generally, Doc. 29.) Devera responds that the statute of limitations has been tolled due to Trent Jr.'s minority and because of Montana's discovery rule. (See generally, Doc. 33.)

5

## II. STANDARD FOR SUMMARY JUDGMENT

A court will grant summary judgment if the movant can show "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *Anderson*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable fact-finder to return a verdict for the nonmoving party. *Id*.

The moving party has the initial burden to submit evidence demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets its initial responsibility, the burden shifts to the nonmoving party to establish a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party must "go beyond the pleadings and by 'the depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).

## III. DISCUSSION

Montana law provides for two distinct causes of action for a death caused by the negligent act or omission of another – survivorship and wrongful death. Survival actions derive from Mont. Code Ann. § 27-1-501 and provide for the

recovery of damages for the injury to the decedent. The action belongs to the decedent's estate, and "the damages recoverable in the action are personal to the decedent and the estate's right of recovery is identical to the decedent's had he or she lived." *Payne v. Eight Judicial Dist. Court*, 60 P.3d 469, 472. (Mont 2002).

Wrongful death actions are provided by Mont. Code Ann. § 27-1-513. Unlike survival claims, a cause of action for wrongful death "is created and vests in the heirs of the decedent." *Swanson v. Champion Intern. Corp.*, 646 P.2d 1166, 1170 (Mont. 1982). "Wrongful death actions are personal to the decedent's heirs and independent of any cause of action available to the decedent's estate." *Payne*, 60 P.3d at 472.

Prior to 1987, Section 27-1-513 provided that a wrongful death claim could be maintained by either the decedent' heirs or by the personal representative of his or her estate. In 1987, however, the Montana legislature amended this section, which now reads:

> When injuries to and the death of one person are caused by the wrongful act or neglect of another, *the personal representative of the decedent's estate* may maintain an action for damages against the person causing the death or, if such person be employed by another person who is responsible for his conduct, then also against such other person. (Emphasis added).

By this amendment, the Montana Legislature sought to prevent multiple lawsuits and duplicative recovery. *Renville v. Fredrickson*, 101 P.3d 773, 778 (Mont. 2004). As a result of the amendment, Section 27-1-513 has now "been

7

interpreted to mean that only *one* wrongful death action arising out of an adult's wrongful death may be brought and the decedent's personal representative is the only person who may bring such an action." *Id.* at 777. (Emphasis in original.)

A wrongful death action accrues at the time of the decedent's death. *Carroll v. W.R. Grace & Co.*, 830 P.2d 1253, 1255 (Mont. 1992). A three-year statute of limitations apples to wrongful death actions. *Bryant v. Hall*, 482 P.2d 147 (Mont. 1971). Thus, the cause of action here accrued on July 9, 2010, the date of the Trent's death, and the statute of limitations would have expired on July 9, 2013. This case was filed on December 21, 2017, more than four years after the statute of limitations would have run. Therefore, absent some mechanism for tolling the running of the statute of limitations, Devera's claims are barred.

### A. Minority Tolling

Devera first argues that the statute of limitations was tolled by Trent Jr.'s minority. As a surviving child, Trent Jr. is an heir for purposes of a wrongful death action. *In re Estate of Bennett*, 308 P.3d 63, 66 (Mont. 2013) (decedent's minor children and surviving spouse are "proper parties" who may recover damages in a wrongful death action). He is also a minor. Devera therefore argues that his wrongful death claim was tolled by Montana's minority tolling provision, Mont. Code Ann. § 27-2-401(1), which provides:

> If a person *entitled to bring an action* mentioned in part 2, except 27-2-211(3), is, at the time the cause of action accrues, either a minor or has been

8

committed pursuant to 53-21-127, the time of the disability is not a part of the time limit for commencing the action. . . . (Emphasis added.)

The flaw in Devera's argument is Trent Jr. was not "a person entitled to bring an action" for wrongful death, as specified in the tolling statute. As discussed above, the personal representative is the only person entitled to bring a wrongful death claim, and there is no assertion that the original personal representative (Terrilyn), or any successor personal representative, was a minor during the running of the statute of limitations. Therefore, the minority tolling provision does not apply.

This conclusion is supported by the Montana Supreme Court's decision in *Runstrom v. Allen*, 191 P.3d 410 (Mont. 2008). In that case, a sixteen-year-old suffered serious injuries in an all-terrain vehicle accident. *Id.* at 411. He was treated by a trauma surgeon at Benefis Healthcare in Great Falls, but he died the following day. *Id.* More than three years later, the decedent's father brought wrongful death and survival medical malpractice claims as personal representative of the estate. *Id.* at 411-12. The district court granted summary judgment for the defendants based on the three-year statute of limitations applicable to medical malpractice claims. *Id.* at 412.

On appeal, the plaintiff argued that the decedent's minority tolled the running of the 3-year limitations period until he would have turned 18 had he lived. *Id.* at 412. The Montana Supreme Court rejected this argument, and pointed out

9

that the minority tolling statute only applies if the person entitled to bring the action is a minor at the time the action accrues. *Id.* at 413. With respect to the survival claim, the Court noted that the father, as personal representative, was the person entitled to bring the survival claim, and it was undisputed that the father was not a minor. *Id.*

The Court also declined to adopt the plaintiff's theory to extend the statute of limitations for the wrongful death claim. The plaintiff argued that because the wrongful death and survival claims must be joined in one action, the limitations period for the wrongful death claim would also be tolled along with the period for the survival claim. *Id.* at 414. The Court rejected the argument, and said "[h]aving determined minority tolling does not apply to [the father's] survival claim, we conclude it also does not apply to the joined wrongful death claim." *Id.*

The Montana Supreme Court's analysis applies equally to the present situation. The only distinction between *Runstrom* and the present action is *Runstrom* involved the question of minority tolling where the decedent was a minor, while this case involves tolling where an heir is a minor. Nevertheless, the principle articulated in *Runstom* is the minority tolling statute only applies where the person entitled to bring the action is a minor. Here, the personal representative of the estate, not Trent Jr., was the person entitled to bring a wrongful death claim.

There is no indication the personal representative was a minor. Minority tolling does not apply.

Devera nevertheless argues that other jurisdictions have come to a contrary conclusion, and have applied minority tolling in wrongful death cases where an heir was a minor. Devera is correct that there is a split of authority on this issue, with each jurisdiction determining the question based upon its own unique statutes of limitations and minority tolling provisions. See, 85 A.L.R.3d 162 (originally published in 1978) (discussing conflicting authority on the issue of "[m]inority of surviving children as tolling limitation period in state wrongful death actions."). The annotation observes that one of the factors considered by courts examining this issue is who is entitled to bring the action under the wrongful death statute. In cases where the minor, as opposed to the personal representative, could bring the action, minority tolling applied. But where, as here, the wrongful death statute provided that only the personal representative could bring the action, "the minority of a surviving child was held not to affect the running the limitation period, the courts in most cases concluding that a statute providing a toll due to the infancy of a person entitled to bring the action would therefore not apply." *Id.* (*See also Id.* at § 7[b], collecting cases).

/ / /

/ / /

## B. Discovery Rule

Devera next argues that the statute of limitations may be tolled under the discovery rule. Generally, the period of limitations begins to run when a claim accrues. Mont. Code Ann. § 27-2-102(2); *Christian v. Atl. Richfield Co*, 358 P.3d 131, 139 (Mont. 2015). "The discovery rule constitutes an exception to this general principle[.]" *Christian*, 358 P.3d at 152. Under the discovery rule, "if the facts constituting the claim are concealed or self-concealing in nature, or if the defendant has acted to prevent the injured party from discovering those facts, the period of limitations does not begin to run until the injured party has discovered, or in the exercise of due diligence should have discovered, both the injury and its cause." *Id.*; Mont. Code Ann. § 27-2-102(3).

The Montana Supreme Court has recognized that the discovery rule may toll the statute of limitations where the injury is apparent, but the plaintiff is unable to determine the cause of the injury. *Christian*, 358 P.3d at 153; *Nelson v. Nelson*, 50 P.3d 139, 143-45 (Mont. 2002); *Hando v. PPG Indus. Inc.*, 771 P.2d 956, 962 (Mont. 1989). *See also Hornung v. Richardson-Merrill, Inc.*, 317 F.Supp. 183 (D. Mont. 1970). A plaintiff's mere suspicions about the causal connection does not necessarily defeat the application of the discovery rule. *Christian*, 358 P.3d at 153; *Hando*, 771 P.2d at 962. But the plaintiff must exercise reasonable diligence. *Christian*, 358 P.3d at 153. If the plaintiff has sufficient information to "lead a

12

prudent [person] to inquiry or action," the limitations period will not be tolled. *Id.* at 154 ("The benefit of the discovery rule is available only where the injury cannot be discovered despite the exercise of due diligence.").

In *Hando*, for example, the plaintiff was exposed to paint fumes at work. *Hando*, 771 P.2d at 958. In the years following her exposure, she suffered from numerous emotional, mental and physical problems. *Id.* The plaintiff suspected her ailments were related to her exposure to the paint, but all of the physicians who examined her denied that there was any causal connection. *Id.* Approximately two years later, however, medical tests revealed that her problems were caused by her exposure to the paint. *Id.* The Montana Supreme Court determined the statute of limitations was tolled until the medical diagnosis confirmed the causal connection. *Id.* at 502. The Court noted that the plaintiff's failure to learn the cause of her injury was not due to a lack of diligence on her part. *Id. See also Nelson*, 50 P.3d at 143 (holding the limitations period was tolled until the plaintiff's suspicions regarding the link between her physical ailments and her exposure to certain chemicals and a vaccine injection was confirmed by a physician).

The tolling of the limitations period is ordinarily a question of fact, and material factual disputes regarding whether an injury was "concealed or self-concealing, whether the defendant acted to prevent discovery of those facts, or whether the plaintiff exercised due diligence, [] must be resolved by the trier of

13

fact." *Christian*, 358 P.3d at 153. *See also Johnston v. Centennial Log Homes & Furnishings, Inc.*, 305 P.3d 781, 790 (Mont. 2013) (finding it was for the jury to determine at what point the plaintiffs reasonably should have discovered defects in their log home); *Hornung*, 317 F.Supp. at 185 (holding there was an issue of fact as to whether the plaintiff knew the drug manufactured by the defendant caused his injury where there was "a permissible inference of knowledge on the one side and a categorical denial of knowledge on the other").

Here, the injury – Trent's death – was apparent as of July 9, 2010. Disputed questions of fact exist, however, as to whether the personal representative knew or should have discovered that his death was potentially caused by hydrogen sulfide exposure, and possibly the negligence of XTO Energy. XTO Energy points to evidence that Trent's death was initially identified by the Sheriff's Office as "a possible H2S gas death" (Doc. 30-2); the ambulance report stated the ambulance was "dispatched to rig for man exposed to H2S" (Doc. 30-5); Trent's blood tested positive for trace amounts of propane and n-butane (Doc. 30-6); and the autopsy report noted that "concerns were initially over the possibility of hydrogen sulfide or methane exposure." (Doc. 30-9.) From this evidence, XTO Energy asserts the personal representative had sufficient knowledge of facts to constitute a claim for wrongful death as early as September 2010.

Devera, on the other hand, points out that H2S or other poison gas were ruled out as the cause of death by the coroner and the State of Montana. (Docs. 34-6; 34-7.) Instead, it was determined that Trent died from "hypertensive cardiovascular disease." (Doc. 34-6.) Devera contends that it was not until she was contacted by the reporter in late 2015 that she learned other similar oilfield deaths were being investigated as caused by gas exposure. (Doc. 34-2 at ¶ 4.) Prior to that time, both Devera and Fischer allege they believed Trent died of a heart attack, and had no information to the contrary. (Doc. 34-1 at ¶ 13; Doc. 34-2 at ¶ 3.)

The fact Devera was aware of the injury, does not demonstrate as a matter of law that she knew or reasonably could have discovered the cause of Trent's death. Rather, competing inferences can be drawn from the evidence regarding the personal representative's knowledge, and whether she was diligent in discovering the causal link between Trent's death and his exposure to toxic gas. Therefore, whether the discovery rule tolls the statute of limitations in this case must be resolved by the trier of fact. *Christian*, 358 P.3d at 153.

/ / /

/ / /

/ / /

/ / /

## IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Exxon Mobil's Motion for Summary Judgment (Doc. 28) be **DENIED**.

**IT IS ORDERED.**

DATED this 13th day of September, 2019.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge